# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TASIA FAUNTLEROY

**(b)** County of Residence of First Listed Plaintiff    Gloucester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lane J. Schiff , Esquire
Console Mattiacci Law LLC, 110 Marter Avenue, Suite 502, Moorestown, NJ 08057   856-854-4000

## DEFENDANTS

HUMANA MARKETPOINT, INC., & HUMANA, INC.

County of Residence of First Listed Defendant    Burlington
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. §2000e, et seq.  ("Title VII"); 42 U.S.C. §1981 ("Section 1981"), N.J.S.A. §10:5-1, et seq. ("NJLAD").

Brief description of cause:
Plaintiff brings this action against her former employers for unlawful race and sex discrimination, harassment and retaliation.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
November 28, 2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **TASIA FAUNTLEROY** | : | |
| **Swedesboro, NJ 08085** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HUMANA MARKETPOINT, INC.** | : | **JURY TRIAL DEMANDED** |
| **3000 Atrium Way, Suite 200** | : | |
| **Mt. Laurel, NJ 08054** | : | |
| | : | |
| **&** | : | |
| | : | |
| **HUMANA, INC.** | : | |
| **3000 Atrium Way, Suite 200** | : | |
| **Mt. Laurel, NJ 08054** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

## I.   INTRODUCTION

Plaintiff, Tasia Fauntleroy, brings this action against her former employers, Defendants, Humana MarketPOINT, Inc., and Humana, Inc, ("Defendants") for unlawful race and sex discrimination, harassment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. §10:5-1, *et seq.* ("NJLAD"). Plaintiff seeks all damages allowable at law, including back-pay, front-pay compensatory, punitive, costs and attorneys' fees, and all other relief that this Court deems appropriate.

II.   **PARTIES**

1.      Plaintiff, Tasia Fauntleroy, is an individual and a citizen of the State of New Jersey.  She resides in Swedesboro, New Jersey.

2.      Defendant Humana MarketPOINT, Inc., is a corporation maintaining a place of business at 3000 Atrium Way, Suite 200, Mt. Laurel, New Jersey 08054.

3.      Defendant Humana, Inc., is a corporation maintaining a place of business at 3000 Atrium Way, Suite 200, Mt. Laurel, New Jersey 08054.

4.      At all times material hereto, Defendants employed more than fifteen (15) employees.

5.      At all times material hereto, Defendants acted by and through their authorized agents and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

6.      At all times material hereto, Defendants collectively constituted Plaintiff's employer under the joint and/or single employer doctrine.  Upon information and belief, Defendants shared common management, had interrelated operations, and collectively controlled Plaintiff's job duties and responsibilities.

7.      At all times material hereto, Defendants were an employer within the meanings of Title VII, Section 1981, and the NJLAD.

8.      At all times material hereto, Plaintiff was an employee within the meanings of Title VII, Section 1981, and the NJLAD.

### III.    JURISDICTION AND VENUE

9.      The causes of action that form the basis of this matter arise under Title VII, Section 1981, and the NJLAD.

10.     The District Court has jurisdiction over Count I (Title VII) and Count II (Section 1981), pursuant to 28 U.S.C. §1331.

11.     The District Court has supplemental jurisdiction over Count III (NJLAD) pursuant to 28 U.S.C. §1367.

12.     Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5.

13.     On or about April 27, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein ("Charge").  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge (with personal identifying information redacted).

14.     On or about November 8, 2022, the EEOC issued Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of this notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

15.     Plaintiff is filing this complaint within ninety (90) days from her receipt of this Notice.

16.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    **FACTUAL ALLEGATIONS**

17.    Plaintiff was hired by Defendants on August 27, 2018.

18.    Plaintiff held the position of Sales and Marketing Support Executive.   She consistently performed her job duties in an excellent manner.

19.    Plaintiff last reported to Mike Bully, Director, and Cara Brown, Director.   Bully and Brown reported to Frank Pistone, Northeast Region President.

20.    Defendants employ an underrepresentation of female employees, especially in high level positions.

21.    Defendants employ an underrepresentation of black employees, especially in high level positions.

22.    Soon after Plaintiff commenced her employment, Defendants began subjecting Plaintiff to invidious race and sex discrimination that persisted throughout her employment.  By way of example, and without limitation:

a. Joseph Cocozza (male, white), Sales Manager, who was at Plaintiff's organizational level, acted as if he was Plaintiff's superior and had supervisory authority over her;

b. Cocozza treated Plaintiff differently and worse, and in a more hostile and dismissive manner, than he treated white and/or male employees;

c. Cocozza unjustly criticized Plaintiff's performance;

d. Cocozza was demeaning and condescending to Plaintiff;

e. Cocozza disregarded and overrode Plaintiff's decisions and opinions;

f. Cocozza refused to work with Plaintiff;

g. Cocozza ignored directives and procedures that Plaintiff had suggested and/or put into place with the approval of supervisors;

h. Cocozza instructed Plaintiff to do administrative duties, that were not part of her job description;

i. Cocozza took office supplies from Plaintiff's office and told other employees that they could use Plaintiff's office without asking her;

j. Defendants excluded Plaintiff from communications related to her job duties;

k. Cocozza commented on Plaintiff's appearance and her hair;

l. Cocozza commented that Plaintiff changed her hair frequently and certain of Plaintiff's hair styles look more professional than others;

m. Cocozza expressed shock over Plaintiff's salary;

n. Xander Clague, Market President, remarked at a work function that he felt uncomfortable when all the black employees stood together;

o. Nicolle Collache, Agent, who reported to Cocozza, asked if Plaintiff's hair was real, and tried to touch it;

p. Cocozza commented that racial disparities were excuses.  He stated that anything could be achieved with hard work.  When Plaintiff asked him if he had ever heard of the Tulsa Massacre, he stated that he had not.  After explaining the Tulsa Massacre to him, Cocozza responded that black people should create another Tulsa and that it could be called "Blacktown";

q. Unlike white and/or male employees at Plaintiff level, Plaintiff was not provided with administrative support; and

r. Plaintiff was tasked with additional tasks and responsibilities without corresponding salary increases.

23.     On December 20, 2019, Plaintiff applied for the position of Healthcare Strategy Consultant, which would have been a promotion for Plaintiff.  Plaintiff was qualified for the position.

24.     On December 20, 2019, Defendants failed to promote Plaintiff to the Healthcare Strategy Consultant position.

25.     Plaintiff received no explanation, including the selection criteria, as to why she was not interviewed, was not promoted, and was removed from consideration for the Healthcare Strategy Consultant position.

26.     On January 7, 2020, Karyn Depontes, Provider Contracting, asked Plaintiff and another black employee if they knew the name of the ship that brought their enslaved ancestors to America.  Brown witnessed this comment and did not object to the same.

27.     Plaintiff complained of the above racist comment to Brown.  Brown was dismissive of the comment and Plaintiff's complaint.

28.     On January 8, 2020, Plaintiff applied for the position of Broker Relations Manager, which would have been a promotion for Plaintiff.  Plaintiff was qualified for the position.

29.     Plaintiff expressed her interest in the Broker Relations Manager position to Brown and stated that she had applied for the same.

30.     Plaintiff thereafter interviewed for the Broker Relations Manager position, with numerous employees.

31.     On January 17, 2020, Plaintiff complained to Maria Hughes, Diversity, Equity, and Inclusion, in connection with the comment made to Plaintiff on January 7, 2020.  Plaintiff suggested that Defendants implement comprehensive, interactive diversity trainings for employees.  Plaintiff received no response to her complaint.

32.     On February 28, 2020, Plaintiff learned that Brown had recently contacted Silvana Monsalve (Hispanic) and told her to apply for the Broker Relations Manager position.

33.     On March 2, 2020, in a phone call with Brown, Defendants failed to promote Plaintiff to the Broker Relations Manager position.

34.     The stated reason was that Defendants had decided to select someone else for the position. Defendants further told Plaintiff that, while she was a finalist for the Broker Relations Manager position, Plaintiff was not selected because she did not have sales experience.

35.     Plaintiff does have sales experience.

36.     Monsalve was selected for the Broker Relations Manager position.

37.     Plaintiff was more qualified for the Broker Relations Manager position than the noncomplaining, nonblack candidate who was selected.

38.     Despite giving the position to Monsalve instead of Plaintiff, Brown thereafter instructed Plaintiff to provide additional support to Monsalve.

39.     On June 10, 2020, Plaintiff emailed Jim Van Valin, Senior Vice President, the following, "I see racism and discrimination daily in my role at Humana. It appears in our unwillingness to contract minority providers especially in areas like the Bronx where the majority of our membership is black or brown. It manifests as the sales manager I work with feeling it appropriate to make comments about my hair, or making insensitive comments about the local protests. It shows up as seemingly innocent conversations with coworkers who ask 'How did your family get to this country' or 'do you know the name of the slave ship they came on?' That last situation was enough for me to reach out to our Diversity and Inclusion department. I even suggested implementing comprehensive (i.e. not those computer based trainings associates just click through to get the certificate) trainings for all associates. I received no response. What good

7

is having a Diversity and Inclusion department if they do not actively teach/train associates about implicit bias, micro-aggression, the minority experience, etc. It does not matter that there is a black female figure head. It feels like it is all optics."

40.     Plaintiff received no written response to her email.

41.     On August 14, 2020, Plaintiff emailed Bruce Broussard, Chief Executive Officer, complaining of race discrimination within Defendants work force and inquiring as to how Defendants planned to ensure that its workforce was anti-racist.

42.     On October 21, 2020, Plaintiff applied for the Population Health Lead position, which would have been a promotion for her.  Plaintiff was qualified for the position.

43.     On December 2, 2020, Defendants failed to promote Plaintiff to the Population Health Lead position.

44.     Plaintiff received no explanation, including the selection criteria, as to why she was not interviewed, was not promoted, and was removed from consideration for the Population Health Lead position.

45.     Instead of promoting Plaintiff, Defendants selected Ebony Bell for the Population Health Lead position.  Plaintiff was more qualified for the position than the noncomplaining candidate who was selected.

46.     On March 15, 2021, Plaintiff applied for the position of Senior Insurance Product Manager. This position would have constituted a promotion for Plaintiff.

47.     Plaintiff was qualified for this position.

48.     Plaintiff interviewed multiple times for the Senior Insurance Product Manager position.

49.     On May 3, 2021, Brown informed Plaintiff that she was a finalist for the Senior Insurance Product Manager position.

50.     On May 26, 2021, Defendants failed to promote Plaintiff to the Senior Insurance Product Manager position.

51.     The stated reason was that Defendants would "not be pursuing [Plaintiff's] candidacy for the role at this time" and that Defendants "decided to move forward with a different candidate."

52.     Instead of promoting Plaintiff, Defendants selected Kevin Curey (male, white), for the Senior Insurance Product Manager position.

53.     Plaintiff was more qualified for the position than the noncomplaining candidate who was selected.

54.     On April 28, 2021, Plaintiff applied for the position of Population Health Strategy Lead, which would have been a promotion for her.  Plaintiff was qualified for the position.

55.     On May 12, 2021, Defendants failed to promote Plaintiff to the Population Health Strategy Lead position.  The stated reason was that Defendants would "not be pursuing [Plaintiff's] candidacy for the role at this time."

56.     Instead of promoting Plaintiff, Defendants selected Keith Duncan (male, white), for the Population Health Strategy Lead position.

57.     Plaintiff was more qualified for the position than the noncomplaining, nonblack candidate who was selected.

58.     On June 2, 2021, in a phone call with Brown, Plaintiff asked why she had not been selected for positions for which she had applied.  Brown ignored Plaintiff's question. She

9

simply stated that Plaintiff could assist Defendants on two (2) "special projects" that would support the positions for which Plaintiff had applied and was denied.

59.     On June 9, 2021, Bully informed Plaintiff that she and Cocozza would both be issued a written coaching document.

60.     On June 9, 2021, following the above, Plaintiff emailed Bully the following: "I have been very honest about the hostile work environment in NJ, my attempts to engage Joe [Cocozza], the issues with the SNJ team, and the ongoing struggles I've continued to have. I'd like to have a formal conversation regarding the formal coaching so we can discuss the specifics around why I am being given a formal coaching."

61.     Plaintiff received no written response to her email.

62.     On June 9, 2021, following the above, in an email from Bully entitled "Coaching Discussion," he instructed both Cocozza and Plaintiff to "commit to communication efforts" and keep each other informed.

63.     On June 21, 2021, Adam Jackson, Corporate Diversity and Inclusion Lead, stated that he was concerned about Cocozza's continued objection to a presentation Jackson intended to give on "privilege."

64.     On July 26, 2021, Plaintiff applied for the position of Population Health Strategy Lead.  This position would have been a promotion for Plaintiff.

65.     Plaintiff was qualified for the Population Health Strategy Lead position.

66.     Plaintiff interviewed for the Population Health Strategy Lead position.

67.     On September 22, 2021, Defendants failed to promote Plaintiff to the Population Health Strategy Lead position.

68.     Defendants articulated reason was that "[t]here were several excellent candidates for the position" who had "years of population health experience in NYC."

69.     Instead of promoting Plaintiff, Defendants selected Charisma Hooda (Indian) for the Population Health Strategy Lead position.

70.     Plaintiff was more qualified for the position than the external, noncomplaining, nonblack candidate who was selected.

71.     On August 13, 2021, Plaintiff applied for the position of Assistant Vice President, Health Equity Strategy and Community Engagement.  This position would have been a promotion for Plaintiff.

72.     Plaintiff was qualified for the Assistant Vice President, Health Equity Strategy and Community Engagement position.

73.     On August 25, 2021, Defendants failed to promote Plaintiff to the Assistant Vice President, Health Equity Strategy and Community Engagement position.

74.     Instead of promoting Plaintiff, Defendants selected Tamara Smith for the Population Assistant Vice President, Health Equity Strategy and Community Engagement position.

75.     Plaintiff was more qualified for the position than the external, noncomplaining candidate who was selected.

76.     On August 23, 2021, Plaintiff applied for the position of Director, Health Equity Business Intelligence, which would have been a promotion for Plaintiff.

77.     Plaintiff was qualified for the Director, Health Equity Business Intelligence position.

78.     On August 25, 2021, Defendants failed to promote Plaintiff to the Director, Health Equity Business Intelligence position.

79.     Defendants selected Angela Hagan (white) for the Director, Health Equity Business Intelligence position.

80.     Plaintiff was more qualified for the position than the white, noncomplaining candidate who was selected.

81.     On September 7, 2021, Plaintiff applied for the position of Director, Strategy Advancement, which would have been a promotion for Plaintiff.

82.     Plaintiff was qualified for the Director, Strategy Advancement position.

83.     On September 7, 2021, Defendants failed to promote Plaintiff to the Director, Strategy Advancement position.

84.     Instead of promoting Plaintiff, Defendants selected Lauren Libert (white) for the Director, Strategy Advancement position.

85.     Plaintiff was more qualified for the position than the white, noncomplaining candidate who was selected.

86.     On September 7, 2021, Plaintiff applied for the Population Health Strategy Lead – Bold Goal position, which would have been a promotion for Plaintiff.

87.     Plaintiff was qualified for the Population Health Strategy Lead – Bold Goal position.

88.     On October 7, 2021, Defendants failed to promote Plaintiff to the Population Health Strategy Lead – Bold Goal position.

89.     Instead of promoting Plaintiff, Defendants selected Laura Bastien (white) for the Population Health Strategy Lead – Bold Goal position.

90.     Plaintiff was more qualified for the position than the white, noncomplaining candidate who was selected.

91.     On November 17, 2021, in a leadership team meeting, led by Bully, Plaintiff complained of sex discrimination.

92.     Megan Regan, Veteran Executive, indicated that she agreed with Plaintiff's complaints.  Cocozza unjustly criticized Regan and Plaintiff, and commented that we needed to "put on []our big boy pants."  Bully remained silent.

93.     On November 30, 2021 and December 1, 2021, Plaintiff again complained of discrimination to Bully. Bully failed to take appropriate corrective and remedial action.

94.     On January 14, 2022, Deanna Atchley, Senior Associate Relations Professional, told Plaintiff that Defendants were investigating her complaints.  Plaintiff complained of Cocozza's continued sexist and racist behavior.

95.     On January 17, 2022, Cocozza emailed Plaintiff, and others, "[p]ersonally, when I hear terms like white supremacy or white privilege I feel defensive, attacked and have a tendency to 'clam-up' from giving my opinion. In addition, the use of those terms makes me feel those using them are attempting to show victimhood or making excuses rather than focusing on their own opportunities."

96.     On February 2, 2022, following Cocozza contradicting Plaintiff's work instructions to other employees, Plaintiff complained to Bully, "it baffles me as to why Joe [Cocozza] continues to find error in everything I do, say, suggest – unless, as I have inferred before he does not appreciate my position in this market due to racism, sexism, ageism, or all of the above."

97.    On February 2, 2022, Bully copied Cocozza on his response to Plaintiff's above complaint so that Cocozza could read the same.

98.    On February 2, 2022, Plaintiff forwarded the above email chain to Atchley, and stated that she did not feel safe at Defendants.

99.    On February 2, 2022, Plaintiff emailed Bully that she "was expressing [her] concerns under the assumption of confidentiality, and did not intend for [her] original email to [Bully] to be shared with Joe [Cocozza]."

100.   On February 2, 2022, Bully requested that Plaintiff and Cocozza to meet to address Plaintiff's complaints. Plaintiff responded that "[g]iven the market's history and how these conversations have gone in the past, [she did not] see this meeting going well or being productive – especially considering how Joe [Cocozza] responded" previously.  Plaintiff further explained that "what she expressed in [her] email are not new concerns. Over the years, [she has] voiced these or similar concerns to" numerous employees" and yet she is "still in the same place" as when she "started and Joe [Cocozza] was making comments about [her] hair, and expressing shock over [her] salary."

101.   On February 26, 2022, Plaintiff went out of work on a medical leave of absence due to the race and sex discrimination and retaliation to which she was subjected and Defendants' failure to remedy or prevent the same.

102.   On March 18, 2022, Atchley told Plaintiff that, as a result of her complaints (which were complaints of race and sex discrimination) against him, Cocozza filed a defamation complaint against Plaintiff.

103.   Plaintiff has never been shown copy of the alleged complaint, she does not know what it means, and she has not been told what Defendants' position is regarding the same.  Plaintiff

14

has heard nothing more about the alleged complaint, and no one has told her they support her in connection with this alleged complaint.

104.    Defendants failed to remedy or prevent the sex and race discrimination and retaliation to which Plaintiff was subjected.

105.    Defendants failed to appropriately investigate Plaintiff's sex and race discrimination and retaliation complaints.

106.    On May 6, 2022, Plaintiff resigned her employment, effective May 27, 2022.

107.    Plaintiff resigned from Defendants because of the sex and race discrimination, harassment, and retaliation to which she was subjected, and because Defendants failed to remedy or prevent the discrimination, harassment, and retaliation to which she was subjected.

108.    Defendants additionally recently terminated the employment of DeSouza.

109.    Plaintiff's race was a motivating and determinative factor in Defendants' decision not to promote Plaintiff into the position of Healthcare Strategy Consultant.

110.    Plaintiff's engaging in protected activity and/or race were motivating and determinative factors in Defendants' decision not to promote Plaintiff into the position of Broker Relations Manager.

111.    Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' decision not to promote Plaintiff to the position of Population Health Lead.

112.    Plaintiff's race, sex, and/or engaging in protected activity were motivating and determinative factors in Defendants' decision not to promote Plaintiff into the position of Senior Insurance Product Manager.

113.    Plaintiff's race, sex, and/or engaging in protected activity were motivating and determinative factors in Defendants' decision not to promote Plaintiff into the first position of Population Health Strategy Lead to which she applied.

114.    Plaintiff's race and/or engaging in protected activity were motivating and determinative factors in Defendants' decision not to promote Plaintiff into the second position of Population Health Strategy Lead to which she applied.

115.    Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' decision not to promote Plaintiff into the position of Assistant Vice President, Health Equity Strategy and Community Engagement.

116.    Plaintiff's race and/or engaging in protected activity were motivating and determinative factors in Defendants' decision not to promote Plaintiff into the position of Director, Health Equity Business Intelligence.

117.    Plaintiff's race and/or engaging in protected activity were motivating and determinative factors in Defendants' decision not to promote Plaintiff into the position of Director, Strategy Advancement (Clinical Innovation, Home Care).

118.    Plaintiff's race and/or engaging in protected activity were motivating and determinative factors in Defendants' decision not to promote her into the position of Population Health Strategy – Bold Goal.

119.    Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' actions following her complaints of discrimination, including, without limitation, the manner in which this alleged defamation complaint against Plaintiff was told to her, without any support, without any follow-up, without any investigation, and without any explanation, and the issuance of the coaching document.

120.    Defendants' conduct following Plaintiff's engaging in protected activity would dissuade a reasonable employee from making complaints.

121.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and/or remedial measures to make the workplace free of discriminatory and retaliatory conduct.

122.    Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

123.    Plaintiff's sex, race and/or protected activity were motivating and determinative factors in the hostile work environment to which Plaintiff was subjected.

124.    The hostile work environment to which Plaintiff was subjected constitutes a continuing violation.

125.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

126.    As a direct and proximate result of the discriminatory, harassing, and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

127.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the unlawful behavior complained of herein unless and until this Court grants the relief requested herein.

128.    Plaintiff has incurred and is entitled to all costs and reasonable attorneys' fees incurred as a result of the unlawful behavior complained of herein.

## COUNT I – TITLE VII

129.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

130.    By committing the foregoing acts of discrimination, retaliation, and harassment, Defendants violated Title VII.

131.    Said violations were done with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

132.    As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

133.    No previous application has been made for the relief requested herein.

## COUNT II – SECTION 1981

134.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

135.    By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated Section 1981.

136.    Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

137.    As a direct and proximate result of Defendants' violations of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

138.    No previous application has been made for the relief requested herein.

## COUNT III – NJLAD

139.   Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

140.   By committing the foregoing acts of discrimination, retaliation, and harassment against Plaintiff, Defendants violated the NJLAD.

141.   Members of Defendants' upper management had actual participation, or willful indifference to, Defendants' wrongful and especially egregious conduct described herein, warranting the imposition of punitive damages against Defendants.

142.   As a direct and proximate result of Defendants' violation of the NJLAD, Plaintiff has suffered the damages and losses set forth herein.

143.   No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.   declaring the acts and practices complained of herein to be a violation of Title VII;

b.   declaring the acts and practices complained of herein to be a violation of Section 1981;

c.   declaring the acts and practices complained of herein to be a violation of the NJLAD;

d.   enjoining and restraining permanently the violations alleged herein;

e.       awarding compensatory damages to Plaintiff to make Plaintiff whole for past and/or future lost earnings;

f.       awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

g.       awarding Plaintiff back-pay and front-pay;

h.       awarding interest;

i.       awarding punitive damages;

j.       awarding Plaintiff the costs of this action, together with reasonable attorneys' fees;

k.       awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, and the NJLAD; and

l.       granting such other and further legal and equitable relief as this Court deems appropriate.

**CONSOLE MATTIACI LAW LLC**

Dated: <u>November 28, 2022</u>          By:      <u>*/s/ Lane J. Schiff*</u>
                                                          Lane J. Schiff, Esquire
                                                          1525 Locust Street, 9th Floor
                                                          Philadelphia, PA 19102
                                                          (215) 545-7676

                                                          *Attorney for Plaintiff,*
                                                          *Tasia Fauntleroy*

# EXHIBIT A

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | Ǫ FEPA<br>X EEOC | |

| STATE OR LOCAL AGENCY: |
|---|

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Tasia Fauntleroy** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>REDACTED |
|---|---|

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>Swedesboro, NJ 08085 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Humana MarketPOINT, Inc.;**<br>**Humana, Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>> 15 | TELEPHONE (Include Area Code)<br>(717) 766-6040 |
|---|---|---|

| STREET ADDRESS<br>3000 Atrium Way, Suite 200 | CITY, STATE AND ZIP<br>Mt. Laurel NJ 08054 | COUNTY<br>Camden |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>**X** Race   Ǫ Color   **X** Sex   Ǫ Religion   Ǫ National Origin<br>**X** Retaliation   Ǫ Age   Ǫ Disability   Ǫ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*          *Latest*  04/22/2022 (ongoing) |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondent on or about August 27, 2018. I hold the position of Sales and Marketing Support Executive. I report to Mike Bully (male, black), Director, and Cara Brown (female, white), Director. Bully and Brown report to Frank Pistone (male, white), Northeast Region President. Pistone reports to Daniel Maltese (male, white), Vice President, Retail Career Distribution. Matlese reports to Jim Van Valin (male, white), Senior Vice President, MarketPoint. Van Valin reports to Alan Wheatley (male, white), Segment President, Retail. Wheatley reports to Bruce Broussard (male, white), Chief Executive Officer.

Respondent subjected me to a hostile work environment and failed to promote me because of my race and/or sex and/or race and sex discrimination complaints. After I complained of race and sex discrimination, Respondent failed to promote me, treated me in a more hostile and dismissive manner, and failed to remedy or prevent the race and sex discrimination and retaliation to which I was subjected. I went out of work on a medical leave of absence because of the race and sex discrimination and retaliation to which I was subjected, and because of Respondent's failure to remedy or prevent the race and sex discrimination and retaliation to which I was subjected.

I consistently demonstrated positive performance and dedication to Respondent. I performed my duties in a highly-competent manner.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty or perjury that the foregoing is true and correct. | |

| Date:  04/25/2022        Charging Party *(Signature):* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|



**EEOC Charge of Discrimination**
**Initials of Charging Party –**

2.      Harm Summary

I have been discriminated against because of my sex (female) and my race (black), and retaliated against because of my sex and race discrimination complaints.  Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a)  Respondent has an underrepresentation of female employees, especially in high level positions.

(b)  Respondent has an underrepresentation of black employees, especially in high level positions.

(c)  Soon after I began working at Respondent, Joseph Cocozza (male, white), Sales Manager, who was at the same level as me, acted as though he was a superior to me and had supervisory authority over me.

(d)  Cocozza treated me differently and worse, an in a more hostile and dismissive manner, than he treated white and/or male employees.

(e)  Cocozza unjustly criticized my performance.

(f)  Cocozza was demeaning and condescending to me.

(g)  Cocozza disregarded and overrode my decisions and opinions.

(h)  Cocozza refused to work with me.

(i)  Cocozza ignored directives and procedures that I had suggested and/or put into place with the approval of supervisors.

(j)  Cocozza instructed me to do administrative duties, that were not part of my job description.

(k)  Cocozza took office supplies from my office and told other employees that they could use my office without asking me.

(l)  Cocozza excluded me from communications related to my job duties.

(m)  Cocozza commented on my appearance and my hair.

(n)  Cocozza commented that I change my hair a lot.

(o)  Cocozza commented that certain of my hair styles look more professional than others.

(p)  Nicolle Colache (white), Agent, who reported to Cocozza, asked if my hair was real, and tried to touch it.

(q)  Cocozza commented that black people should rebuild Black Wallstreet and call it Blacktown.

(r)  I never witnessed Cocozza engaging in similar comments and conduct toward white and/or male employees.

(s)  Unlike white and/or male employees at my level, I was not provided with



**EEOC Charge of Discrimination**
**Initials of Charging Party –**

administrative support.  When I raised the issue, I was told that it was not in the budget.

(t)  I was piled on with additional tasks and responsibilities without corresponding salary increases.

(u)  On December 20, 2019, I applied for the posted Healthcare Strategy Consultant position, which would have been a promotion for me.  I was qualified for the position.

(v)  On December 20, 2019, following the above, Respondent failed to promote me to the Healthcare Strategy Consultant position.  The system showed that I was removed from consideration for this position.

(w)  I received no explanation, including the selection criteria, as to why I was not interviewed, was not promoted, and was removed from consideration for the Healthcare Strategy Consultant position.

(x)  Respondent failed to interview me or promote me to the Healthcare Strategy Consultant position because of my race and/or my sex.

(y)  On January 7, 2020, in a meeting with Brown, Veleska DeSouza (female, black), Sales Manager, Karyn Depontes (female, white), Provider Contracting, and Tamara Hejab (female, Middle Eastern), Senior Director of Marketing for Riverside Medical Group, Depontes asked DeSouza and me if we knew the name of the ship that brought our enslaved ancestors to America.  Neither Brown nor anyone else objected to the racist comment.

(z)  Following the above, I complained of the above racist comment to Brown.  She was dismissive of the comment and my complaint.

(aa) Respondent failed to investigate my race discrimination complaint.

(bb) Respondent failed to remedy or prevent the race discrimination to which I was subjected.

(cc) On January 8, 2020, I applied for the posted Broker Relations Manager position, which would have been a promotion for me.  I was qualified for the position.

(dd) On January 10, 2020, in a meeting with Brown, I expressed my interest in the posted Broker Relations Manager position and stated that I had applied for the position.

(ee) On January 17, 2020, in a message to Maria Hughes (female, black), Diversity, Equity, and Inclusion, I complained of race discrimination in connection with the racist comment to me on January 7, 2020.  I suggested that Respondents implement comprehensive, interactive diversity trainings for employees.

(ff)  I received no response to my above message.

(gg) On January 28, 2020, I was interviewed for the Broker Relations Manager position by Audra Heir (female, white), Senior Recruiter.

(hh) On February 10, 2020, I was interviewed for the Broker Relations Manager position by Pistone, Sarah Elmer (female, white), Director of Regional Sales, and Judy Gee (female, white), Broker Relationship Manager.

(ii)  On February 28, 2020, in a conversation with DeSouza, she told me that she heard



that Brown had recently contacted Silvana Monsalve (Hispanic) while Monsalve was on maternity leave and told her to apply for the posted Broker Relations Manager position.

(jj)  On March 2, 2020, in a phone call with Brown, Respondent failed to promote me to the Broker Relations Manager position.  The stated reason was that Elmer had decided to select someone else for the position.

(kk) On March 4, 2020, in an email from Brown to employees, she stated that Monsalve (Hispanic) was selected for the Broker Relations Manager position.  I was more qualified for the position than the noncomplaining, nonblack candidate who was selected.

(ll)  On March 18, 2020, in a phone call with Elmer, she told me that I was a finalist for the Broker Relations Manager position, but I was not selected because I did not have sales experience.  This is false, as I did have sales experience.

(mm)    Respondent failed to promote me to the Broker Relations Manager position because of my race and/or my race discrimination complaint.

(nn) In or about March 2020, after Rae was terminated, I began reporting to Bully in addition to Brown.

(oo) On April 13, 2020, I received an email from Respondent's Recruiting Team, stating that Respondent "will not be pursuing [my] candidacy for the [Broker Relations Manager] role at this time."

(pp) On June 10, 2020, in an email to Van Valin, I stated the following: "I see racism and discrimination daily in my role at Humana. It appears in our unwillingness to contract minority providers especially in areas like the Bronx where the majority of our membership is black or brown. It manifests as the sales manager I work with feeling it appropriate to make comments about my hair, or making insensitive comments about the local protests. It shows up as seemingly innocent conversations with coworkers who ask "How did your family get to this country" or "do you know the name of the slave ship they came on?" That last situation was enough for me to reach out to our Diversity and Inclusion department. I even suggested implementing comprehensive (i.e. not those computer based trainings associates just click through to get the certificate) trainings for all associates. I received no response. What good is having a Diversity and Inclusion department if they do not actively teach/train associates about implicit bias, micro-aggression, the minority experience, etc. It does not matter that there is a black female figure head. It feels like it is all optics."

(qq) I received no written response to my above email.

(rr)  On August 14, 2020, in an email to Broussard, I stated the following: "We can't be naïve to think everyone will adopt anti-racist ideologies. This became very evident during a breakout session I was in during this week's Marketpoint leadership meeting. During a discussion on race and equity, Ali, a participant in my group wrote a comment and stated "we have to keep in mind that discrimination can affect anyone regardless of skin color…" This comment has a very "All Lives Matter" undertone. So, my first question to you, what is Humana's stance on racism. For me it's very black and white (no pun intended). In terms of social justice, there is no room for grey, either you are against racism and will do the anti-racism work or you are a racist."

(ss) On October 21, 2020, I applied for the posted Population Health Lead position, which would have been a promotion for me.  I was qualified for the position.



**EEOC Charge of Discrimination**
**Initials of Charging Party –**

(tt) On December 2, 2020, Respondent failed to promote me to the Population Health Lead position. The system showed that I was removed from consideration for this position.

(uu) I received no explanation, including the selection criteria, as to why I was not interviewed, was not promoted, and was removed from consideration for the Population Health Lead position.

(vv) Instead of promoting me, Respondent selected Ebony Bell for the Population Health Lead position. I was more qualified for the position than the noncomplaining candidate who was selected.

(ww)    Respondent failed to interview me or promote me to Population Health Lead position because of my race discrimination complaints.

(xx) On February 2, 2021, after I requested to start a Diversity Council at Respondent, Bully told me that he would work with me to create the same. Bully insisted on including Cocozza on the Diversity Council. I objected to the same. Bully stated that the Diversity Council should be representative of all viewpoints, not just those that align with our own, and that there are others at Respondent that may have the same sentiments as Cocozza.

(yy) In February 2021, following the above, during the first Diversity Council meeting, Cocozza commented that racial disparities were excuses. He stated that anything could be achieved with hard work. When I asked him if he had ever heard of the Tulsa Massacre, he stated that he had not. After explaining the Tulsa Massacre to him, he responded that black people should create another Tulsa and that it could be called "Blacktown."

(zz) On February 24, 2021, Brown instructed me to provide additional support to Monsalve.

(aaa)    On March 15, 2021, I applied for the posted Senior Insurance Product Manager position, which would have been a promotion for me. I was qualified for the position.

(bbb)    On April 8, 2021, I was interviewed for the Senior Insurance Product Manager position by Leah Brucchieri (female, white), Director, Special Programs, Retail Product Development, and Angel Cain (female, white), Director Stars Improvement Quality Initiatives.

(ccc)    On April 19, 2021, I was interviewed for the Senior Insurance Product Manager position by Keith McKenzie (male, white), Insurance Product Manager, and Tiffany Robinson (female, black), Lead Insurance Product Manager.

(ddd)    On April 28, 2021, I applied for the posted Population Health Strategy Lead position, which would have been a promotion for me. I was qualified for the position.

(eee)    On May 15, 2021, in an automated email, Respondent failed to promote me to the Population Health Strategy Lead position.

(fff) Instead of promoting me, Respondent selected Keith Duncan (male, white), for the Population Health Strategy Lead position. I was more qualified for the position than the noncomplaining, nonblack candidate who was selected.

(ggg)    Respondent failed to interview me or promote me to the Population Health



EEOC Charge of Discrimination
Initials of Charging Party –

Strategy Lead position because of my sex, my race and/or my race discrimination complaints.

(hhh)   On May 3, 2021, in a message from Brown, she told me I was a finalist for the Senior Insurance Product Manager position.

(iii)  On May 12, 2021, in an email from Respondent's Recruiting Team, Respondent failed to promote me to the Population Health Strategy Lead position.  The stated reason was that Respondent would "not be pursuing [my] candidacy for the role at this time."

(jjj)  On May 26, 2021, in an email from Respondent's Recruiting Team, Respondent failed to promote me to the Senior Insurance Product Manager position.  The stated reason was that Respondent would "not be pursuing [my] candidacy for the role at this time."

(kkk)   Instead of promoting me, Respondent selected Kevin Curey (male, white), for the Senior Insurance Product Manager position.  I was more qualified for the position than the noncomplaining candidate who was selected.

(lll)   Respondent failed to promote me to the Senior Insurance Product Manager position because of my race, my sex, and/or my race discrimination complaints.

(mmm)  On June 2, 2021, in a phone call with Brown, I asked why I had not been selected for positions that I had applied for.  She ignored and did not answer my question, and stated that I could assist Brucchieri on two (2) "special projects" that would support the positions for which I had applied and was denied.

(nnn)   On June 7, 2021, in an email from Brucchieri, she stated that she "decided to move forward with a different candidate" for the Senior Insurance Product Manager position.

(ooo)   On June 9, 2021, in a phone call with Bully and Cocozza, he stated that Cocozza and I would both be issued a written coaching document.

(ppp)   On June 9, 2021, following the above, in an email to Bully, I stated the following: "I have been very honest about the hostile work environment in NJ, my attempts to engage Joe [Cocozza], the issues with the SNJ team, and the ongoing struggles I've continued to have. I'd like to have a formal conversation regarding the formal coaching so we can discuss the specifics around why I am being given a formal coaching."

(qqq)   I received no written response to my above email.

(rrr) On June 9, 2021, following the above, in an email from Bully, entitled "Coaching Discussion," he instructed both Cocozza and me to "commit to communication efforts" and keep each other informed.

(sss)   On June 15, 2021, in an email to Brucchieri, I provided my updated resume and asked why I was not selected for positions that I had applied for.

(ttt) I received no response to my above email.

(uuu)   On June 21, 2021, Adam Jackson (male, Asian), Corporate Diversity and Inclusion Lead, stated that he was concerned about Cocozza being on the Diversity Council because Cocozza continued to object to the presentation Jackson intended



to give on "privilege."

(vvv)    On July 26, 2021, I applied for the posted Population Health Strategy Lead position, which would have been a promotion for me.  I was qualified for the position.

(www)   On August 13, 2021, I applied for the posted Assistant Vice President, Health Equity Strategy and Community Engagement position, which would have been a promotion for me.  I was qualified for the position.

(xxx)    On August 21, 2021, I was interviewed for the Population Health Strategy Lead position by Austin Brey (male, white), Director, Stars Improvement.

(yyy)    On August 23, 2021, I applied for the posted Director, Health Equity Business Intelligence position, which would have been a promotion for me.  I was qualified for the position.

(zzz)    On August 25, 2021, in an email from Respondent's Recruiting Team, Respondent failed to promote me to the Assistant Vice President, Health Equity Strategy and Community Engagement position.

(aaaa)  Instead of promoting me, Respondent selected Tamara Smith for the Population Assistant Vice President, Health Equity Strategy and Community Engagement position.  I was more qualified for the position than the external, noncomplaining candidate who was selected.

(bbbb)  Respondent failed to interview me or promote me to the Assistant Vice President, Health Equity Strategy and Community Engagement position because of my race discrimination complaints.

(cccc)  On August 25, 2021, in an email from Respondent's Recruiting Team, Respondent failed to promote me to the Director, Health Equity Business Intelligence position.

(dddd)  Instead of promoting me, Respondent selected Angela Hagan (white) for the Director, Health Equity Business Intelligence position.  I was more qualified for the position than the white, noncomplaining candidate who was selected.

(eeee)  Respondent failed to interview me or promote me to the Director, Health Equity Business Intelligence position because of my race and/or my race discrimination complaints.

(ffff)On September 3, 2021, I was interviewed for the Population Health Strategy Lead position by Julie Mascari (female, white), Regional Market President.

(gggg)  On September 7, 2021, I applied for the posted Director, Strategy Advancement position, which would have been a promotion for me.  I was qualified for the position.

(hhhh)  On September 7, 2021, following the above, in an email from Respondent's Recruiting Team, Respondent failed to promote me to the Director, Strategy Advancement position.

(iiii) Instead of promoting me, Respondent selected Lauren Libert (white) for the Director, Strategy Advancement position.  I was more qualified for the position than the white, noncomplaining candidate who was selected.

(jjjj) Respondent failed to interview me or promote me to the Director, Strategy



**EEOC Charge of Discrimination**
**Initials of Charging Party –**

Advancement position because of my race and/or my race discrimination complaints.

(kkkk)   On September 7, 2021, I applied for the posted Population Health Strategy Lead – Bold Goal position, which would have been a promotion for me. I was qualified for the position.

(llll) On September 22, 2021, in an email from Brey, Respondent failed to promote me to the Population Health Strategy Lead position. The email stated the following: "There were several excellent candidates for the position and the final decision was a difficult one, and after careful consideration another candidate has been selected. While I may not be offering you this position, I want to recognize the strengths you demonstrated during the interview: 1. Motivational Fit[;] 2. Strong Passion for Quality[;] 3. Embodiment of the Humana Values[.] Unfortunately, there were other candidates with years of population health experience in NYC, which is critical to this role."

(mmmm)        Instead of promoting me, Respondent selected Charisma Hooda (Indian) for the Population Health Strategy Lead position. I was more qualified for the position than the external, noncomplaining, nonblack candidate who was selected.

(nnnn)   Respondent failed to promote me to the Population Health Strategy Lead position because of my race and/or my race and sex discrimination complaints.

(oooo)   On October 7, 2021, in an email from Respondent's Recruiting Team, Respondent failed to promote me to the Population Health Strategy Lead – Bold Goal position.

(pppp)   Instead of promoting me, Respondent selected Laura Bastien (white) for the Population Health Strategy Lead – Bold Goal position. I was more qualified for the position than the white, noncomplaining candidate who was selected.

(qqqq)   Respondent failed to interview me or promote me to the Population Health Strategy Lead – Bold Goal position because of my race and/or my race discrimination complaints.

(rrrr)     On November 17, 2021, in a leadership team meeting, led by Bully, I complained of sex discrimination. Megan Regan (female, white), Veteran Executive, indicated that she agreed with my complaints. Cocozza unjustly criticized Regan and me, and commented that we needed to "put on []our big boy pants." Bully remained silent.

(ssss)   On November 30, 2021, in an email to Bully, I stated the following: "I am going into tomorrow's meeting with a great deal of anxiety. I had pure intentions when I highlighted the sexism and ageism I've witnessed or experienced on this leadership team. Though no one has explicitly put a label on our team's current dynamic; it has been discussed either on focus group sessions or during individual discussion by Amy, Laurie, Jennifer, Megan, and myself. And I'm certain each of them has come to you with similar concerns. So for all of them, with the exception of Megan, to remain silent during our in person team meeting is frustrating at best and lends to the perpetuation of the toxic and hostile work environment present on the leadership team."

(tttt)On December 1, 2021, in a leadership team meeting, led by Bully, I again, along with other employees, complained of sex discrimination, including the way that the male managers treat and talk about female managers. Bully again remained silent.

(uuuu)   On January 14, 2022, in a meeting with Deanna Atchley (female, black), Senior

8



**EEOC Charge of Discrimination**
**Initials of Charging Party –**

Associate Relations Professional, I was told that Respondents were investigating my complaints.  I complained of Cocozza's continued sexist and racist behavior.

(vvvv)   On January 17, 2022, in an email from Cocozza to the Diversity Council, he stated the following: "Personally, when I hear terms like white supremacy or white privilege I feel defensive, attacked and have a tendency to 'clam-up' from giving my opinion. In addition, the use of those terms makes me feel those using them are attempting to show victimhood or making excuses rather than focusing on their own opportunities."

(wwww)On February 2, 2022, in an email to Bully, I stated the following: "[I]t baffles me as to why Joe [Cocozza] continues to find error in everything I do, say, suggest – unless, as I have inferred before he does not appreciate my position in this market due to racism, sexism, ageism, or all of the above."

(xxxx)   On February 2, 2022, following the above, in an email from Bully, he copied Cocozza on his response to me so that Cocozza could read the above email I sent to Bully about Cocozza.

(yyyy)   On February 2, 2022, in an email to Atchley, forwarding the above email chain, I stated that I did not feel safe at Respondent.

(zzzz)   On February 2, 2022, in a response email to Bully, I stated the following: "I was expressing my concerns under the assumption of confidentiality, and did not intend for my original email to you to be shared with Joe [Cocozza]."

(aaaaa)  On February 2, 2022, in a response email from Bully, he stated the following: "I'm going to put an in person meeting with you in [sic] Joe in the Mt Laurel office. We can't have these statements and perceptions without not address them accordingly as best as we can."

(bbbbb) On February 3, 2022, in an email to Bully, I stated the following: "Given the market's history and how these conversations have gone in the past, I don't see this meeting going well or being productive – especially considering how Joe [Cocozza] responded after the last Diversity Council meeting. What I expressed in my email are not new concerns. Over the years, I have voiced these or similar concerns to you, to Cara, to Mike Rae, to Frank, to Jim Van Valin, to HR, and to my colleagues. Yet, we are still in the same place we were when I started and Joe [Cocozza] was making comments about my hair, and expressing shock over my salary."

(ccccc)  On February 26, 2022, I went out of work on a medical leave of absence due to the race and sex discrimination and retaliation to which I was subjected at Respondent and Respondent's failure to remedy or prevent the same.

(ddddd) On March 18, 2022, in a phone call with Atchley, she told me that, as a result of my complaints (which were complaints of race and sex discrimination) against him, Cocozza had filed a defamation complaint against me.

(eeeee) I have never been shown copy of the alleged complaint, I do not know what it means, and I have not been told what Respondent's position is with regard to the same.  I have heard nothing more about the alleged complaint, and no one has told me they support me in connection with this alleged complaint.

(fffff)    The manner in which this alleged defamation complaint against me was told to me, without any support, without any follow-up, without any investigation, and without any explanation, was retaliatory.



**EEOC Charge of Discrimination**
**Initials of Charging Party –**

(ggggg) Respondent failed to remedy or prevent the sex and race discrimination and retaliation to which I was subjected.

(hhhhh) Respondent failed to investigate my sex and race discrimination and retaliation complaints.

(iiiii) I remain on a medical leave of absence.

(jjjjj) Respondent recently terminated DeSouza (female, black).

(kkkkk) Respondent subjected me to a hostile work environment because of my race and/or my sex and/or my race and sex discrimination complaints.

(lllll) The race-, sex-, and retaliatory-based hostile work environment to which I have been subjected constitutes a continuing violation.

(mmmmm)     Respondent failed to promote me to and/or select me for any of the position for which I was qualified and had applied because of my race and/or sex and/or race and sex discrimination complaints.

(nnnnn) Before complaining of race and sex discrimination, I had no performance or disciplinary issues throughout my employment.

(ooooo) Respondent's race and sex discriminatory and retaliatory conduct and comments have caused me emotional distress.

(ppppp) Respondent did not target or treat in the same way similarly-situated white and/or male and/or noncomplaining employees.


B.   1.   Respondent's Stated Reasons

(a)   Respondent has provided no explanation for subjecting me to a hostile work environment because of my race and/or sex and/or my race and sex discrimination complaints.

(b)   Respondent's stated reasons for failing to promote me to any of the positions for which I was qualified and had applied are pretext for race and/or sex discrimination and/or retaliation because of my race and sex discrimination complaints.

(c)   Respondent has provided no explanation for failing to remedy or prevent the race and sex discrimination and retaliation against me.


C.   1.   Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my race (black) and my sex (female), and retaliated against me based on my race and sex discrimination complaints in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"); the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"); and 42 US Code § 1981 ("1981"), as set forth herein.

# EXHIBIT B

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Tasia Fauntleroy<br>REDACTED<br>Swedesboro, NJ 08085 | From: | Philadelphia District Office<br>801 Market St, Suite 1000<br>Philadelphia, PA 19107 |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2022-05164 | Legal Unit,<br>Legal Unit Representative | 267-589-9707 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Karen McDonough
11/08/2022

Enclosures(s)

**Karen McDonough**
**Deputy District Director**

cc:   **Jennifer Starr**
      **HUMANA**
      **1500 W Main St**
      **Louisville, KY 40203**

      **Emily R Derstine Friesen**
      **Console Mattiacci Law, LLC**
      **1525 Locust Street, 9th Fl**
      **Philadelphia, PA 19102**